**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

PETER GUGGISBERG, Civil No. 00-1384 (JRT/RLE)

Plaintiff,

v.

ROCKWELL INTERNATIONAL CORP.,

Defendant and Third-Party Plaintiff,

**MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

v.

NEW ULM CONCRETE PRODUCT, INC,

Third-Party Defendant.

---

Robert P. Christensen, DUNKLEY, BENNETT, CHRISTENSEN & MADIGAN, 701 Fourth Avenue South, Suite 700, Minneapolis, MN 55415; and James M. Sherburne, SHERBURNE LAW OFFICE, 735 Northstar West, 625 Marquette Avenue, Minneapolis, MN 55402, for plaintiff.

Joseph E. Flynn and Eugene F. Flick, JARDINE, LOGAN & O'BRIEN, 2100 Piper Jaffray Plaza, 444 Cedar Street, St. Paul, Minnesota 55101, for defendant and third-party plaintiff Rockwell International Corporation.

Michael R. Moline, CONLEY & BORGESON, 2550 University Avenue West, Suite 220, St. Paul, Minnesota 55114, for third-party defendant New Ulm Concrete Products.

FILED 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Plaintiff Peter Guggisberg ("plaintiff") sued defendant Rockwell International Corporation ("Rockwell/Allen-Bradley" or "Allen-Bradley") to recover for injuries suffered when his hand was caught in a machine containing parts manufactured by Allen-Bradley, a Rockwell subsidiary. Plaintiff was injured while working at New Ulm Concrete Products, Inc. ("New Ulm"). Rockwell has filed a third-party complaint against New Ulm, arguing that New Ulm is responsible for plaintiff's injuries.

This matter is now before the Court on two motions for summary judgment: (1) defendant's motion for summary judgment against plaintiff, and (2) third-party defendant New Ulm's motion for summary judgment against third-party plaintiff Rockwell/Allen-Bradley. For the reasons set forth below, the Court denies defendant's motion in part and grants it in part. The Court also denies New Ulm's motion for summary judgment.

**BACKGROUND**

On August 14, 1996, plaintiff was an employee of third-party defendant New Ulm, and was operating a "bending roller" machine. Wire mesh is fed into the machine, which bends the wire into a tube. While operating the machine, plaintiff observed that the mesh was feeding unevenly. He believed the problem was caused by a "pick" – a stray piece of short wire – that plaintiff saw stuck in the machine's rollers. The rollers are operated by a control box with four switches: forward, reverse, stop, and jog/run. The "jog/run" switch has two positions: in the "run" position, the machine moves continuously after a directional button is

pressed; in the "jog" position, the machine runs only while the operator holds down a directional button. On August 14, 1996, plaintiff was operating the machine in the "jog" position.

Plaintiff determined that running the rollers forward would dislodge the pick so he could pull it out with his hand. He reached for the pick with his left hand, and operated the control box with his right hand. Instead of pressing the "forward" button, however, plaintiff inadvertently pressed the "reverse" button. Thus, instead of rolling the pick out toward plaintiff's hand, the rollers turned inward, pulling plaintiff's hand between the rollers and crushing it, causing severe injuries.

The bending roller machine was manufactured in the early 1960s by Hendley Whittemore, a company that is no longer in business. Hendley Whittemore purchased the control box from its manufacturer, Allen-Bradley, a subsidiary of defendant Rockwell.

Plaintiff sued Rockwell/Allen-Bradley, alleging: (1) negligence for defective design of the controls; (2) negligence for failure to warn and adequately instruct on the dangers associated with the machine; (3) strict liability based on the allegedly defective design of the controls; and (4) breach of express and implied warranties. Defendant filed a third-party complaint against plaintiff's employer, New Ulm.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir. 1981).

## II. Defendant Rockwell's Motion for Summary Judgment

### A. Strict Liability and Negligence

The Restatement (Second) of Torts notes that sellers of "unreasonably dangerous" products may be held strictly liable. *See* Restatement (2d) Torts § 402A (1965); *In Re TMJ Implants Products Liability Litigation v. E.I. Du Pont De Nemours & Co.*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("*TMJ Implants*"). A product may be considered "unreasonably dangerous" due to (1) a manufacturing defect; (2) a design defect; or (3) a failure to warn of dangers in the product's use. *Id.* Plaintiff does not allege any manufacturing defects, but he does claim that the Allen-Bradley control box was defectively designed, and that Allen-Bradley breached its duty to warn of the dangers in using the control box.

#### 1. "Component Parts" Doctrine

Defendant seeks summary judgment based on the "component parts" doctrine, which provides that "suppliers of inherently safe component parts are not responsible for accidents that result when the parts are integrated into a larger system that the component part supplier did not design or build." *Id.* (citation and quotation marks omitted). This doctrine applies to claims for negligence and strict liability. *Id.* at 1059. In support of its argument, defendant notes that the control box was a standard switch that was used in a variety of machines, including multiple machines produced by Hendley Whittemore. *See Dahlbeck v. Dico Co., Inc.*, 355 N.W.2d 157, 163 (Minn. Ct. App. 1984) (granting summary judgment in products liability case to component part manufacturer where the product in question, a switch, had many uses that did not require more safety precautions than those taken by defendant).

Plaintiff argues that the control box was defectively designed, and thus the component parts doctrine does not apply. *See id.* at 1056 (holding that component part manufacturer can be held strictly liable if the component part is itself defective and is the cause for the assembled product being defective). In particular, plaintiff offers evidence showing that Allen-Bradley sold safety devices that could have prevented inadvertent activation of buttons, and also offered buttons in safer configurations.

The Court determines that plaintiff has demonstrated the existence of a genuine issue of material fact on the issues of negligence and strict liability. Specifically, the Court finds a significant factual dispute over whether the control box itself was defectively designed, or whether it was safe, given its use as a component part. Therefore, whether the "component parts" defense applies is, in this case, a matter for the jury.

**2. Primary Assumption of Risk**

Defendant also argues that plaintiff's negligence and strict liability claims are barred by the doctrine of primary assumption of risk. The Court rejects this argument. Defendant argues that plaintiff knew and ignored the risks involved in operating the machine as he did. This is sufficient to establish secondary negligence, which in Minnesota is merged with the doctrine of comparative negligence. *See Springrose v. Willmore*, 292 N.W.2d 23, 24-25 (Minn. 1971); *Iepson v. Noren*, 308 N.W.2d 812, 816 n.1 (Minn. 1981). It is not sufficient, however, to show primary assumption of risk.

"Application of the primary assumption of risk doctrine is uncommon." *Rusciano v. State Farm Mutual Automobile Ins. Co.*, 445 N.W.2d 271, 273 (Minn. Ct. App., 1989). Primary assumption of risk is not an affirmative defense, but relates to the issue of whether a defendant had any duty to protect the plaintiff from harm. *Springrose*, 292 N.W.2d at 827. Furthermore, primary assumption of risk can only apply when the plaintiff expressly or implicitly manifests consent to relieve the defendant of that duty. *Armstrong v. Mailand*, 284 N.W.2d 343, 351 (Minn. 1979). "[N]ot every deliberate encountering of a known danger . . . is reasonably to be interpreted as evidence of such consent." *Iepson*, 308 N.W.2d at 815 (quoting Prosser, Handbook of the Law of Torts § 68 (4th ed. 1971) (stating that even a jaywalker who dashes in front of speeding cars "does not manifest consent that they shall use no care and run him down. On the contrary, he is insisting that they shall take immediate precautions for his safety.").

Defendant appears to ignore the critical distinction between primary and secondary assumption of risk. *See Armstrong*, 284 N.W.2d at 351. *See also Walk v. Starkey Machinery, Inc.*, 180 F.3d 937, 940-41 (8th Cir. 1999) (Lay, dissenting) (discussing the holdings of Minnesota state courts on primary assumption of risk). In the present case, there is no evidence that plaintiff expressly or implicitly relieved Allen-Bradley of the duty to care for his safety. Therefore, the Court finds that defendant's argument about primary assumption of risk is without basis.

Based on the foregoing discussion, defendant's motion for summary judgment will be denied on the issues of strict liability (Count Three) and negligence (Count One).

**B. Failure to Warn**

Count Two of the Complaint alleges that Allen-Bradley owed a duty to warn and adequately instruct plaintiff on the proper and safe use of the bending roller machine. Defendant seeks summary judgment, arguing that it had no duty to warn because it did not know, nor did it have any reason to know, the purpose for which Hendley Whittemore ordered the control box.

Whether there exists a duty to warn is a legal matter for the court. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001); *Germann v. F.S. Smithe Machine Co.*, 395 N.W.2d 922, 924 (Minn. 1986); *Lundman v. McKown*, 530 N.W.2d 807, 820 (Minn. Ct. App. 1995) ("Where the facts are not in controversy, the existence of duty is a question of law.").[1] In making this determination, the Court must go to the event causing the damage – here, the accident – and look back to the alleged negligent act – here, Allen-Bradley's alleged failure to properly instruct plaintiff on how to safely operate the control box. *Germann*, 395 N.W.2d at 924. If the connection is "too remote to impose liability as a matter of public policy," a court will generally find no duty and thus no liability. *Id.* However, if the consequence "should have been reasonably foreseeable," a court should find as a matter of law that a duty exists. *Id.*

To determine whether plaintiff's injury was a reasonably foreseeable consequence of Allen-Bradley's failure to warn, the Court must know the extent of Hendley Whittemore's

[1] Although determination of the existence of a legal duty is generally made by the Court, it is "longstanding legal tradition in Minnesota that close questions of foreseeability be referred to the factfinder for resolution." *Louis v. Louis*, 2001 WL 15739 at *2 (Minn. Ct. App. Jan. 9, 2001); *Lundgren v. Fultz*, 354 N.W.2d 25, 28 (Minn. 1984).

and Allen-Bradley's relationship. In particular, the Court needs to understand the precise nature of the orders that Hendley Whittemore made to Allen-Bradley. Defendant claims that there was virtually no communication between the two companies beyond the exchange of order forms and invoices. Defendant states that Hendley Whittemore specified exactly what it wanted, and Allen-Bradley made control boxes to those specifications. Plaintiff contends that Allen-Bradley must have known how Hendley Whittemore would use its control boxes, because the companies had been associated for twenty-seven years, and Allen-Bradley had a sales office near Hendley Whittemore's plant. Plaintiff also notes that Allen-Bradley sold guards designed to deter inadvertent activation of its control box, which, plaintiff claims, proves that Allen-Bradley knew the control box was unsafe.

The deposition testimony and other facts in the record are unclear on this factual matter. If evidence shows that Allen-Bradley did, in fact, know how its controls were being used, plaintiff's injury might have been reasonably foreseeable. However, the Court cannot make this determination from the facts now in the record. The Court finds that a genuine issue of material fact exists as to what Allen-Bradley knew about the ultimate use of its control switches, and as to whether Allen-Bradley knew they were used for dangerous machinery. Accordingly, the Court will deny summary judgment on Count Two of plaintiff's Complaint, anticipating that further facts will come out at trial to help the Court make this determination.

**C. Breach of Warranties**

Count Four of plaintiff's complaint alleges breach of express warranties and of the implied warranties of fitness and merchantability. At the hearing on these motions, plaintiff's counsel abandoned the claim for breach of express warranties. Plaintiff's brief presented no arguments supporting his implied warranty claims; at the hearing, however, plaintiff's counsel stated that plaintiff rested his warranty of fitness claim on the "component parts" argument, but made no effort to explain how. Plaintiff's counsel also made no mention of plaintiff's warranty of merchantability claim. Based on this minimal presentation, and resolving all factual doubts in favor of plaintiff, the Court determines that no genuine issue of material fact exists on any of plaintiff's warranty claims. Accordingly, defendant's motion for summary judgment will be granted as to Count Four of the complaint.

**III. Third-Party Defendant New Ulm's Motion for Summary Judgment**

New Ulm seeks summary judgment, claiming that third-party plaintiff Rockwell/Allen-Bradley has shown no evidence to support New Ulm's liability for the accident. Rockwell/Allen-Bradley argues that New Ulm failed to take appropriate safety measures to prevent injuries like plaintiff's. This issue revolves largely around the factual question of plaintiff's safety training.

New Ulm points to evidence that it trained its employees on safety, and that plaintiff "was fully trained for any eventuality on the roller machine." New Ulm Memorandum Supporting Summary Judgment at 7. Rockwell/Allen-Bradley, however, notes plaintiff's

testimony that picks frequently became caught in the rollers, but he was never instructed on how to handle such a situation. *See* Rockwell Response Memorandum at 4. Given the nature of plaintiff's accident, this dispute is material. Accordingly, the Court determines that a genuine issue of material fact exists regarding New Ulm's safety procedures, and New Ulm's motion for summary judgment is therefore denied.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Rockwell International Corporation's Motion for Summary Judgment [Docket No. 19] is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Count Four of plaintiff's Complaint [Docket No. 1] and that Count is therefore **DISMISSED with prejudice**. The motion is **DENIED** as to Counts One, Two, and Three of plaintiff's Complaint.

2. Third-Party Defendant New Ulm Concrete Products' motion for Summary Judgment [Docket No. 24] is **DENIED**.

DATED: March 31, 2002
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.